IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| KAREN BUCHER, | ) | |
|       Plaintiff, | ) | |
| | ) | |
| vs | ) | Civil Action No. 2:14-cv-659 |
| | ) | |
| AMERICAN HEALTH AND LIFE INSURANCE COMPANY, et al., | ) ) | |
|       Defendants. | ) | |

MEMORANDUM AND ORDER

Plaintiff, Karen Bucher, filed this action in the Court of Common Pleas of Allegheny County, Pennsylvania, alleging claims of breach of contract, unjust enrichment and bad faith under 42 Pa. C.S. § 8371 against Defendants, American Health and Life Insurance Company (American Health), CitiFinancial Servicing LLC (which states that it was erroneously identified as CitiFinancial Services Inc.) (CitiFinancial), and OneMain Financial Services, Inc. (OneMain). The claims arise out of the alleged cancellation of and failure to pay the proceeds of a life insurance policy following the death of Plaintiff's husband, Clarence Bucher, on April 21, 2013.

Defendants removed the case to this Court on the basis of diversity of citizenship and filed a motion to compel arbitration and stay proceedings. Plaintiff filed an Amended Complaint and Defendants again filed a motion to compel arbitration and stay proceedings. For the reasons that follow, the motion will be denied.

Facts

On or around September 7, 2005, Plaintiff and her husband, Clarence Bucher (together, the Buchers), took a mortgage secured loan from CitiFinancial for a principal balance of $98,146.32. (Am. Compl. ¶ 9 & Ex. 1.)[1] At the same time, upon advice and recommendation of

---

[1] ECF No. 16.

CitiFinancial, the Buchers obtained a debtor group insurance policy on Clarence Bucher's life for up to $100,000.00 that was issued through American Health. (Am. Compl. ¶¶ 10, 24 & Ex. 2.) On or around February 20, 2007, the Buchers took a second mortgage secured loan from CitiFinancial for a principal balance $15,591.79. (Am. Compl. ¶ 11 & Ex. 3.) CitiFinancial advised them not to refinance their first mortgage as they would lose their debtor group insurance on Clarence Bucher's life. Had CitiFinancial not provided this advice, the Buchers would have refinanced their first mortgage. (Am. Compl. ¶¶ 12-13.)

At some time prior to April 21, 2013, OneMain began servicing both loans taken by the Buchers. The Buchers made all the required payments on the group life insurance policy. (Am. Compl. ¶¶ 14-15, 18.)

On April 21, 2013, Clarence Bucher died as a result of complications of coronary artery disease and diabetes mellitus. (Am. Compl. ¶ 16 & Ex. 4.) At the time, he was still under the age of 66. (Am. Compl. ¶ 19.)

Subsequently, Plaintiff discovered that Defendants had unilaterally canceled the group life insurance policy without providing notice of any kind. Prior to April 21, 2013, the Buchers were never notified that the policy was being canceled or terminated. (Am. Compl. ¶¶ 17, 20.) "Plaintiff suffered damages in the amount of the value of benefits owed under the group life insurance policy and interest." (Am. Compl. ¶ 21.)

Procedural History

Plaintiff filed this action in the Court of Common Pleas of Allegheny County, Pennsylvania on April 15, 2014, alleging claims of breach of contract, bad faith and unjust enrichment. On May 21, 2014, Defendants removed the action to this Court on the basis of diversity jurisdiction, 28 U.S.C. § 1332, in that: Plaintiff is a citizen of Pennsylvania; American

Health is a citizen of Texas; CitiFinancial is a citizen of Delaware; OneMain is a citizen of Delaware and Maryland; and the amount in controversy, exclusive of interest and costs, exceeds the sum of $75,000.00. (Notice of Removal ¶¶ 6-9, 20, 26-30.)

On June 4, 2014, Defendants filed a motion to compel arbitration and stay proceedings (ECF No. 5). Plaintiff filed a brief in opposition on June 30, 2014 (ECF No. 11). On July 8, 2014, Defendants filed a reply brief (ECF No. 12-1).

On July 18, 2014, Plaintiff filed an Amended Complaint (ECF No. 16). Count I alleges that American Health breached the insurance contract. Count II alleges that American Health acted in bad faith in violation of § 8371. Count III seeks a declaratory judgment that Plaintiff's obligations in regard to the mortgage ceased as of April 21, 2013 and became the responsibility of American Health. Finally, Count IV alleges that American Health was unjustly enriched by retaining the premiums Plaintiff and her husband paid on the policy as well as the debt-servicing costs associated with the loans subsequent to the death of Clarence Bucher.

On July 31, 2014, Defendants filed a second motion to compel arbitration and stay proceedings (ECF No. 17). On August 14, 2014, Plaintiff filed a brief in opposition (ECF No. 21) and on August 27, 2014, Defendants filed a reply brief (ECF No. 23-1).

Standard of Review

Defendants' motion is based on Sections 3 and 4 of the Federal Arbitration Act, 9 U.S.C. §§ 3-4 (FAA). The Court of Appeals has held that motions to compel arbitration should be viewed as summary judgment motions if the parties contest the making of the agreement. Par-Knit Mills, Inc. v. Stockbridge Fabrics Co. Ltd., 636 F.2d 51, 54 & n.9 (3d Cir. 1980). "Only when there is no genuine issue of fact concerning the formation of the agreement should the court decide as a matter of law that the parties did or did not enter into such an agreement." Id.

3

Summary judgment is appropriate "'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Woodside v. School Dist. of Philadelphia Bd. of Educ., 248 F.3d 129, 130 (3d Cir. 2001) (quoting Foehl v. United States, 238 F.3d 474, 477 (3d Cir. 2001) (citations omitted)). In following this directive, a court must take the facts in the light most favorable to the non-moving party, and must draw all reasonable inferences and resolve all doubts in that party's favor. Doe v. County of Centre, Pa., 242 F.3d 437, 446 (3d Cir. 2001); Woodside, 248 F.3d at 130; Heller v. Shaw Indus., Inc., 167 F.3d 146, 151 (3d Cir. 1999).

When the non-moving party will bear the burden of proof at trial, the moving party's burden can be "discharged by 'showing'–that is, pointing out to the District Court–that there is an absence of evidence to support the non-moving party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). If the moving party has carried this burden, the burden shifts to the non-moving party who cannot rest on the allegations of the pleadings and must "do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986); Petruzzi's IGA Supermarkets, Inc. v. Darling-Delaware Co., 998 F.2d 1224, 1230 (3d Cir. 1993).

The FAA applies to any agreement to arbitrate a transaction in interstate commerce and provides that such agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Section 3 of the FAA provides that:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court ... upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on

> application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement...

9 U.S.C. § 3. Section 4 of the FAA provides that:

> A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for the agreement, would have jurisdiction ..., for an order directing that such arbitration proceed in the manner provided for in such agreement.

9 U.S.C. § 4. The Court of Appeals has noted that the stay and compel provisions of Section 3 and Section 4 of the FAA are mandatory. Smith v. The Equitable, 209 F.3d 268, 272 (3d Cir. 2000). The court has also stated that "[i]f all the claims involved in the action are arbitrable, a court may dismiss the action instead of staying it." Seus v. John Nuveen & Co., 146 F.3d 175, 179 (3d Cir. 1998).

There is a "strong federal policy in favor of enforcing arbitration agreements" that should be enforced whenever possible. Dean Witter Reynolds Inc. v. Byrd, 470 U.S. 213, 217 (1985). "Finally, where the contract contains an arbitration clause, there is a presumption of arbitrability in the sense that it should apply 'unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.'" Orlando v. Interstate Container Corp., 100 F.3d 296, 299 (3d Cir. 1996) (quoting United Steelworkers v. Warrior & Gulf Navigation Co., 363 U.S. 574, 582-83 (1960)). The Supreme Court has held that the issue of arbitrability under the FAA is a matter of federal substantive law. Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24 (1983). The Court also held that the FAA "establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay or a like defense to arbitrability." Id. at 24-25 (footnote omitted). However, "the text of § 2 declares that state law may be applied 'if

5

that law arose to govern the validity, revocability, and enforceability of contracts generally.' Thus, generally applicable contract defenses, such as fraud, duress, or unconscionability, may be applied to invalidate arbitration agreements without contravening § 2." Doctor's Assocs., Inc. v. Casarotto, 517 U.S. 681, 686-87 (1996) (quoting Perry v. Thomas, 482 U.S. 483, 493 n.9 (1987)). See Harris v. Green Tree Fin. Corp., 183 F.3d 173, 179 (3d Cir. 1999).

On the other hand, the Supreme Court has also recognized that "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." AT&T Technologies, Inc. v. Communications Workers of America, 475 U.S. 643, 648 (1986). "Thus, before it compels arbitration, a court should determine 'that a valid agreement to arbitrate exists between the parties and that the specific dispute [comes] within the substantive scope of the agreement.'" Pritzker v. Merrill Lynch, Pierce, Fenner & Smith, 7 F.3d 1110, 1114 (3d Cir. 1993) (quoting PaineWebber, Inc. v. Hartmann, 921 F.2d 507, 511 (3d Cir. 1990)).

Under Pennsylvania law, before deciding that a valid arbitration agreement exists, a court must examine: "(1) whether both parties manifested an intention to be bound by the agreement; 2) whether the terms of the agreement are sufficiently definite to be enforced; and 3) whether there was consideration." Blair v. Scott Specialty Gases, 283 F.3d 595, 603 (3d Cir. 2002) (citation omitted). In Par-Knit Mills, the court concluded that disputed issues of fact regarding the existence of an agreement to arbitrate meant that the motion to dismiss or stay had to be denied. 636 F.2d at 54-55.

In support of their motion to compel arbitration, Defendants have submitted three sets of documents, each containing a Disclosure Statement, Note and Security Agreement and a related arbitration agreement. On March 30, 2006, CitiFinancial and the Buchers executed a Disclosure

Statement, Note and Security Agreement in connection with an unsecured personal loan for $2,100.79, Account No. 332569, and a related Arbitration Agreement. (ECF No. 19 Exs. A, B.) On November 18, 2006, CitiFinancial and the Buchers executed a Disclosure Statement, Note and Security Agreement in connection with an unsecured personal loan for $3,674.46, Account No. 336891, and a related Arbitration Agreement. (ECF No. 19 Exs. C, D.) On July 21, 2010, CitiFinancial and the Buchers executed a Disclosure Statement, Note and Security Agreement in connection with an automobile loan for $4,137.52, Account No. 360453, and a related Arbitration Agreement. (ECF No. 19 Exs. E, F.) Defendants also state that Mr. Bucher obtained a life insurance policy from American Health in connection with the 2010 loan and have submitted his application. (ECF No. 19 Ex. G.) It would appear from these documents that the second and third loans represent refinancing of the first loan, at rather exorbitant rates of 28.83%, 28.21%, and 26.92%, respectively.

Defendants argue that these arbitration agreements apply to "all disputes" between the borrower and lender except certain disputes (which do not include breach of contract, bad faith or unjust enrichment) and apply to any "past, present or future insurance, service, or other product that is offered or purchased in connection with a Credit Transaction." They also state that the arbitration agreements apply to CitiFinancial Services and to all "past, present or future respective parents, subsidiaries, affiliates, predecessors, assignees [and] successors." They then indicate that CitiFinancial Services is now known as CNFA Receivables (PA), Inc., which in turn is a wholly-owned subsidiary of Citibank, N.A, which in turn is a wholly-owned subsidiary of Citigroup, Inc.; that American Health and OneMain are wholly-owned subsidiaries of CitiFinancial Credit Company, while CitiFinancial is a limited liability company whose sole member is CitiFinancial Credit Company, and CitiFinancial Credit Company is a wholly-owned

7

subsidiary of Associates First Capital Corporation, which is a wholly-owned subsidiary of Citicorp Banking Corporation, which is a wholly-owned subsidiary of Citigroup, Inc. (ECF No. 19 at 6-7; ECF No. 2.)

None of the three transactions Defendants cite, however, has any connection with the 2005 mortgage and life insurance policy which form the basis of Plaintiff's claims in this matter. The arbitration agreements that Defendants submit do not cite the September 7, 2005 note, but instead reference other notes by specific account number and correspond with the appropriate Disclosure Statement, Note and Security Agreement. In each arbitration agreement, the definition of "we" or "us" or "our" is "the Lender under the Note listed above." In addition, the notes indicate that arbitration is contingent upon a separate agreement entered into on the same date as the note, but no such language appears in the September 7, 2005 mortgage.

The account number for the September 7, 2005 note is 204362 and the life insurance policy refers to this account number. Neither the note nor the policy contains an arbitration agreement. Thus, there is no evidence that Plaintiff agreed to arbitrate disputes arising out of the September 7, 2005 mortgage, note or insurance policy. As indicated above, a party cannot be required to submit to arbitration any dispute which she has not agreed so to submit.

Plaintiff also argues that even if the arbitration agreements Defendants cite applied to this mortgage, the dispute would nonetheless be beyond their reach because the essence of her claims revolve around a cloud on title (which is a type of claim excluded under the agreements); that it would be unconscionable to apply the arbitration agreements to this dispute; and that Defendants waived their right to seek arbitration by delay when they sought extensions of time to respond to Plaintiff's complaint. The Court need not address these alternative arguments.

8

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

KAREN BUCHER, )
       Plaintiff, )
)
vs ) Civil Action No. 2:14-cv-659
)
AMERICAN HEALTH AND LIFE INSURANCE )
COMPANY, et al., )
       Defendants. )

## ORDER

AND NOW, this 28th day of August, 2014,

IT IS HEREBY ORDERED that the second motion to compel arbitration and stay proceedings filed by the Defendants (ECF No. 17) is denied.

IT IS FURTHER ORDERED that the Defendants file an Answer to the Amended Complaint by September 11, 2014.

                                       s/Robert C. Mitchell_____
                                       ROBERT C. MITCHELL
                                       United States Magistrate Judge